**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| DECKERS OUTDOOR CORPORATION, | ) | |
| | ) | |
| | ) | Case No. 12-cv-01973 |
| Plaintiff, | ) | |
| | ) | **Judge Sharon Johnson Coleman** |
| v. | ) | |
| | ) | **Magistrate Susan E. Cox** |
| DOES 1-1,281 d/b/a the aliases identified on | ) | |
| Schedule "A", | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF DECKERS OUTDOOR
CORPORATION'S *EX PARTE* APPLICATION FOR ENTRY OF A (1) TEMPORARY
RESTRAINING ORDER, (2) DOMAIN NAME TRANSFER ORDER, (3) ASSET
RESTRAINING ORDER, (4) EXPEDITED DISCOVERY ORDER AND
(5) SERVICE OF PROCESS BY EMAIL AND ELECTRONIC PUBLICATION ORDER**

Plaintiff Deckers Outdoor Corporation ("Deckers") submits this Memorandum in support of its *Ex Parte* Application for Entry of Temporary Restraining Order, Domain Name Transfer Order, Asset Restraining Order, Expedited Discovery Order and Service of Process by Email and Electronic Publication Order (the "*Ex Parte* Application"). This action is substantially similar to *Deckers Outdoor Corporation v. Does* 1-100, No. 12 Civ. 377, Docket Nos. 20, 30 and 35 (N.D. Ill. 2012); *Deckers Outdoor Corporation v.* Liyanghua et al., No.11 Civ. 7970, Docket Nos. 18, 37 and 42 (N.D. Ill. 2011) and *Deckers Outdoor Corporation v. Does 1-55,* No. 11 Civ. 10, Docket Nos. 26, 38 and 69 (N.D. Ill. 2011) where virtually identical relief was granted against defendants selling counterfeit UGG products on the Internet. *See* unreported decisions attached as Exhibit 6 to the Declaration of Justin R. Gaudio.

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................ 1

II.  STATEMENT OF FACTS............................................................................................ 2

  A.   Deckers' Trademarks and Products ........................................................................ 2

  B.   Defendants' Illegal Activities ................................................................................. 4

III. ARGUMENT ............................................................................................................... 6

  A.   Standard for Temporary Restraining Order and Preliminary Injunction ............. 9

  B.   Deckers will Likely Succeed on the Merits ........................................................ 10

     i.     Deckers Will Likely Succeed on its Trademark Infringement and Counterfeiting Claim. ............................................................................................................................10

     ii.    Deckers is Likely to Succeed on its False Designation of Origin Claim ....................... 14

     iii.   Deckers is Likely to Succeed on its Cyberpiracy Claim ............................................... 14

       *1. Deckers' UGG Trademark is Distinctive and Famous* .............................................. 15

       *2. Defendants Have a Bad Faith Intent to Profit from Deckers' UGG Trademark* ....... 15

       *3. The Domain Names are Identical or Confusingly Similar to or Dilutive to Deckers' UGG Tra.demark* .................................................................................................... 17

     iv. Deckers is Likely to Succeed on its Illinois Uniform Deceptive Trade Practice Act Claim .......................................................................................................................... 18

  C.   There is No Adequate Remedy at Law and Deckers is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief .......................................................... 18

  D.   The Balancing of Harms Tips in Deckers' Favor ............................................... 19

  E.   This Injunction is in the Public Interest .............................................................. 20

VI.  THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE .......................................... 21

  A.   A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Illegal Use of the Deckers Marks is Appropriate................................................. 21

  B.   An Order Transferring the Defendant Domain Names to Deckers' Control is Appropriate………. ............................................................................................ 23

  C.   An Order Preventing the Fraudulent Transfer of Assets is Appropriate ............ 24

  D.   Deckers is Entitled to Expedited Discovery ...................................................... 27

  E.   Service of Process by E-mail and Electronic Publication is Warranted in this Case ........ 28

V.  A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ............................................ 32

VI. CONCLUSION........................................................................................................... 33

## TABLE OF AUTHORITIES

**Federal Cases**

*Abbot Laboratories v. Mead Johnson & Company,*
    971 F.2d 6, 11 (7th Cir. 1992)

*Albert Furst von Thurn und Taxis v. Karl Prince von Thurn und Taxis,*
    2006 WL 2289847, *13 (S.D.N.Y. Aug. 8, 2006)

*American Broadcasting Company v. Maljack Productions, Inc.,*
    34 F. Supp. 2d 665, 681 (N.D. Ill. 1998).

*Anti-Defamation League of B'Nai B'Rith v. National Mexican-American Anti-Defamation Committee., Inc.,*
    510 F.2d 1246, 1247 (D.C.Cir.1975)

*Board of Directors of Sapphire Bay Condominiums West v. Simpson,*
    77 U.S.P.Q. 2d (BNA) 1629, 129 Fed. Appx. 711 (3rd Cir. 2005)

*Bliss Salon Day Spa v. Bliss World LLC,*
    268 F.3d 494, 496-97 (7th Cir.2001)

*Brockmeyer v. May,*
    383 F.3d 798, 800 (9th Cir., 2004)

*Builder's World, Inc v. Marvin Lumber & Cedar, Inc.,*
    482 F.Supp.2d 1065, 1078 (E.D.Wisc.2007)

*Burger King Corp. v. Majeed,*
    805 F. Supp. 994, 1006 (S.D. Fla. 1992)

*CAE, Inc. v. Clean Air Engineering, Inc.,*
    267 F.3d 660, 681 (7th Cir. 2001)

*Chanel, Inc. v. Does 7-172, et al.,*
    No. 2:10-cv-02684-BBD-dkv (W. D. Tenn. Nov. 1, 2010)

*Chanel, Inc. v. Paley,*
    No. 09-cv-04979-MHP (N.D. Cal. Oct. 26, 2009)

*Chanel, Inc. v. Zhixian,*
    No. 10-cv-60585-JIC (S.D. Fla. May 5, 2010)

*Charter National Bank and Trust v. Charter One Financial, Inc.,*
    2001 WL 527404, *1 (N.D.Ill. May 15, 2001)

*Columbia Pictures Industries, Inc. v. Jasso,*
    927 F.Supp 1075, 1077 (N.D. Ill. 1996)


*Deckers Outdoor Corporation v. Does, 1-55, et al.,*

No. 10 Civ. 11 (N.D. Ill. October 18, 2011)

*Deckers Outdoor Corporation v.* Liyanghua et al.,
        No.11 Civ. 7970 (N.D. Ill. 2011)

*Deckers Outdoor Corporation v. Does* 1-100,
        No. 12 Civ. 377 (N.D. Ill. 2012)

*Diarama Trading Company, Inc. v. J. Walter Thompson U.S.A., Inc.,*
        2005 WL 2148925, *12 (S.D.N.Y. Sept. 6, 2005)

*Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*,
        94 F.3d 376, 381 (7th Cir.1996)

*Doty v. Illinois Central Railroad Co.,*
        162 F.3d 460, 461 (7th Cir.1998)

*Dunkin Donuts Franchised Restaurants LLC v. Elkhatib,*
        2009 WL 2192753, *4 (N.D. Ill. July 17, 2009)

*Eli Lilly & Co. v. Natural Answers, Inc.,*
        233 F.3d 456, 468 (7th Cir. 2000)

*Farouk Systems, Inc. v. Eyou Int'l Trading Co., Ltd., et al*
        No. 4:10 CV 2672 (S.D. Tex. Aug. 2, 2010)

*Ford Motor Company v. Lapertosa,*
        126 F. Supp. 2d 463 (E.D. Mich. 2000)

*Ford Motor Co. v. Summit Motor Products, Inc.*,
        930 F.2d 277, 293 (3rd Cir. 1991)

*Frederick Atkins, Inc. v. Carson Pirie Scott & Co., Inc.,*
        1999 WL 1249342, *1 (N.D. Ill. Dec. 13, 1999)

*G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*,
        873 F.2d 985, 999 (7th Cir.1989)

*Gause v. Perkins,*
        56 N.C. (3 Jones Eq.) 177 (1857)

*General Baking Company v. Gorman*,
        3 F.2d 891, 893 (1st Cir. 1925)

*Gillespie v. Civiletti*,
        629 F.2d 637, 642 (9th Cir. 1980)

*Goldwyn Pictures Corp. v. Goldwyn*,
        296 F. 391, 401 (2d Cir. 1924)

*Graham v. Medical Mutual of Ohio,*

130 F.3d 293, 296 (7th Cir. 1997)

*Gucci Am., Inc. v. Curveal Fashion,*
        No. 09 Civ. 8458 (S.D.N.Y. Jan. 20, 2010)

*Gucci America, Inc. v. Does 1-10*,
        No. 10-cv-60328-JAL (S.D. Fla. Mar. 22, 2010)

*Gucci America, Inc. and Louis Vuitton Malletier, S.A. v. Yan*,
        No. 10-cv-61512-WPD (S.D. Fla. Aug. 20, 2010)

*Habitat Educ. Ctr. v. U.S. Forest Serv.*,
        607 F.3d 453, 456 (7th Cir. 2010)

*Harrods Ltd. v. Sixty Internet Domain Names*,
        302 F.3d 214, 234 (4th Cir. 2002)

*Harrods Ltd. v. Sixty Internet Domain Names,*
        157 F. Supp. 2d 658, 677-78 (E.D. Va. 2001)

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,*
        174 F.3d 411 (4th Cir. 1999)

*Iconix v. Tokuda,*
        457 F. Supp. 2d 969, 999 (N.D. Cal. 2006)

*Ideal Industries, Inc. v. Gardner Bender, Inc.,*
        612 F.2d 1018, 1026 (7th Cir. 1979)

*James Burrough Ltd. v. Sign of Beefeater, Inc.*,
        540 F.2d 266, 274 (7th Cir. 1976)

*Juniper Networks, Inc. v. Bahattab*,
        2008 WL 250584, *1-2, (D.D.C. Jan. 30, 2008)

*Kentucky Fried Chicken Corp. v. Smith*,
        351 F. Supp. 1311, 1313 (E.D.Mich.1972)

*Kraft Food Holdings, Inc. v. Helm,*
        205 F. Supp. 2d 942, 956 (N.D. Ill. 2002)

*Krause International Inc. v. Reed Elsevier, Inc.*,
        866 F. Supp. 585, 587-88 (D.D.C. 1994)

*Lamparello v. Falwell*,
        420 F.3d 309, 316 (4th Cir. 2005)

*Levi Strauss & Co. v. Sunrise International Trading Inc.*,
        51 F.3d 982, 987 (11th Cir. 1995)

*Libman Co. v. Vining Industries, Inc.*,

69 F.3d 1360, 1363 (7th Cir.1995)

*Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*,
    2005 WL 3115892 (N.D. Ill. Nov. 8, 2005)

*Louis Vuitton Malletier & Oakley, Inc. v. Veit*,
    211 F. Supp. 2d 567, 584-585 (D. Pa. 2002)

*Lucas Nursery v. Grosse*,
    359 F.3d 806, 809 (6th Cir. 2004)

*MacLean-Fogg Company v. Ningbo Fastlink Equipment Company Ltd.*,
    2008 WL 5100414, *2 (N.D. Ill. Dec. 1, 2008)

*Malarkey-Taylor Assocs., Inc. v. Cellular Telecommunications Industry Association*,
    929 F. Supp. 473, 478 (D.D.C. 1996).

*Mascio v. Public Employment Retirement System of Ohio*,
    160 F. 3d 310, 313 (6th Cir. 1998)

*Nanya Technology Corp. v. Fujitsu Ltd.*, No.
    2007 WL 269087, *6 (D. Guam Jan. 26, 2007)

*Nat'l Football League v. Chen Cheng*,
    No. 11 Civ. 0344 (S.D.N.Y. Jan. 31, 2011)

*Neopost Industries B.V. v. PFE International Inc.*,
    403 F. Supp. 2d 669, 684 (N.D. Ill. 2005)

*The North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co., et al.*,
    No. 10 CIV 1630 (S.D.N.Y. Mar. 16, 2010)

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340, 351 (1978)

*Philip Morris USA, Inc. v. Veles Ltd.*,
    2007 WL 725412, *1 (S.D.N.Y. Mar. 12, 2007)

*Popular Enterprises, LLC v. Webcom Media Group, Inc.*,
    225 F.R.D. 560, 563 (E.D. Tenn. 2004)

*Rathman Group v. Tanenbaum*,
    889 F.2d 787, 789 (8th Cir. 1987)

*Reebok Int'l Ltd. v. Marnatech Enters.*,
    970 F.2d 552, 559 (9th Cir. 1992).

*Re/Max North Cent., Inc. v. Cook*,
    272 F.3d 424, 432 (7th Cir. 2001)

*Rio Props, Inc. v. Rio Int'l Interlink*,

284 F.3d 1007, 1014 (9th Cir. 2002)

*Rosenberg Bros. & Co. v. Elliott*,
  7 F.2d 962, 965-66 (3rd Cir. 1925)

*Shashi, Inc. v. Ramada Worldwide, Inc.*,
  2005 WL 552593, *4 (W.D. Va. Mar. 1, 2005)
*Smith Fiberglass Productss., Inc. v. Ameron, Inc.*,
  7 F.3d 1327, 1329 (7th Cir.1993)

*Spex, Inc. v. The Joy of Spex, Inc.*,
  847 F. Supp. 567, 579 (N.D. Ill. 1994)

*Sporty's Farm, LLC v. Sportsman's Market, Inc.*,
  202 F.3d 489, 498 (2d Cir. 2000)

*Stahly, Inc. v. M.H. Jacobs Co.*,
  183 F.2d 914, 917 (7th Cir. 1950)

*Stork Restaurant, Inc., v. Sahati*,
  166 F.2d 348, 354 (9th Cir. 1948)

*Thompson v. Spring-Green Lawn Care Corp.*,
  126 Ill. App. 3d 99, 104-105 (Ill. App. Ct. 1984)

*Time Warner Enterprises Co. v. Does #1-2, et al.*
  876 F. Supp. 407. 410-11 (E.D.N.Y. 1994)

*Tory Burch, LLC., et al. v. Yong Sheng Int'l Trade Co., LTD,*
  No. 10 Civ. 9336 (S.D.N.Y. May 13, 2011)

*Trans Union LLC v. Credit Research, Inc.*,
  142 F. Supp. 2d 1029 (N.D. Ill. 2001)

*True Religion Apparel, Inc. et al. v. Xiaokang Lee et al.*,
  No. 11 Civ. 8242 (S.D.N.Y. Dec. 12, 2011)

*TY, Inc. v. The Jones Group, Inc.*,
  237 F.3d 891 at 895 (7th Cir. 2001).

*Vance v. Rumsfeld*
  2007 WL 4557812, *6 (N.D.Ill. Dec. 21, 2007)

*Virtual Works, Inc. v. Volkswagen of America, Inc.*,
  238 F.3d 264, 267 (4th Cir. 2001)

*In re Vuitton et Fils*, S.A.,
  606 F.2d 1 (2d Cir. 1979)

*Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*,
  906 F.2d 1202, 1204 (7th Cir. 1990).

*Williams v. Advertising Sex LLC*, 2
        31 F.R.D. 483, 488 (N.D. West Va. 2005)

*Williams-Sonoma, Inc. v. FriendFinder, Inc.*,
        2007 WL 4973848, *4 (N.D. Cal. Dec. 6, 2007)

**Federal Statutes**

Fed. R. Civ. P. 4(f)(2)

Fed. R. Civ. P. 4(f)(3)

Fed. R. Civ. P. 26(b)(2)

Fed. R. Civ. P. 30(b)

Fed. R. Civ. P. 34(b)

Fed. R. civ. P. 64

Fed. R. Civ. P. 65

Fed. R. Civ. P. 65(b)

15 U.S.C. § 1114

15 U.S.C. § 1114(1)

15 U.S.C. § 1116(a)

15 U.S.C. § 1117

15 U.S.C. § 1125(d)

15 U.S.C. § 1125(d)(1)(A)

15 U.S.C. § 1125 (d)(1)(B)(i)

**Other Authorities**

Copyright Act § 501

*4 Callman, Unfair Competition, Trademarks and Monopolies* s 88.3(b) at 205 (3d ed. 1970)

20 U.S.T. 361 (U.S.T. 1969)

## MEMORANDUM OF LAW

## I.    INTRODUCTION

Plaintiff Deckers Outdoor Corporation ("Deckers") brings this action against Defendants Does 1-101 d/b/a/ the aliases identified in "Schedule A" and Does 102-500 (collectively the "Defendants"), for federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), cyberpiracy (Count III) and violation of the Illinois Uniform Trade Practices Act (Count IV).  As alleged in Deckers' Complaint, the Defendants are promoting, advertising, distributing, offering for sale and selling counterfeit products, including boots bearing counterfeit versions of Deckers' UGG® Trademark, through various fully interactive commercial Internet websites operating under at least the Defendant Domain Names and Marketplace Accounts listed in Schedule A attached to the Complaint (collectively the "Defendant Internet Stores").

Defendants directly target unlawful business activities toward consumers in Illinois and cause harm to Deckers' business within this Judicial District and have caused and will continue to cause irreparable injury to Deckers.  Defendants deceive the public by trading upon Deckers' reputation and goodwill by using interactive websites to sell and/or offer for sale unlicensed and counterfeit products featuring Deckers' trademarks.  Defendants should not be permitted to continue their unlawful activities and Deckers respectfully requests that this Court issue *ex parte*: (1) a temporary restraining order against Defendants enjoining the manufacture, importation, distribution, offer for sale, and sale of counterfeit UGG products; (2) an order temporarily transferring Defendants' Domain Names to Deckers; (3) an order temporarily restricting transfer of Defendants' assets to preserve Deckers' rights to an equitable accounting; (4) an order for expedited discovery allowing Deckers to inspect, and copy Defendants' records relating to the manufacture, distribution, offer for sale and sale of counterfeit UGG products and Defendants'

1

financial accounts; and (5) an order allowing service by electronic mail and electronic publication.

## II.     STATEMENT OF FACTS

### A.  Deckers' Trademarks and Products

Deckers holds registrations for the trademark UGG® (and stylized variations) in more than 100 countries around the world including, in the United States, Reg. No. 3,050,925 (the "UGG Trademark"). *See* Exhibit 1 and Declaration of Leah Evert-Burks Declaration, hereinafter "Evert-Burks Declaration," at ¶ 3. Deckers' UGG Trademark is used on footwear and other products and is famous with consumers worldwide, particularly with sheepskin footwear consumers. Deckers extensively markets the UGG brand in the United States and other countries and (together with predecessors) has spent tens of millions of dollars since 1979 to build the UGG brand. Evert-Burks Declaration at ¶ 5.

Deckers' innovative marketing and product design have earned the UGG brand numerous awards and accolades including 2003 and 2011 Brand of the Year honors in *Footwear News* and 2004, 2007, 2008, 2009 and 2010 Brand or Boot of the Year honors in *Footwear Plus*, two leading industry publications. *Id*. at ¶ 7. Deckers was also selected as one of Forbes Best 200 Small Companies for multiple consecutive years. *Id*. at ¶ 7.

Moreover, Deckers' extensive marketing and innovative footwear designs have led to unprecedented growth in UGG brand sales. In 2011, the brand experienced its 14th straight year of double digit sales growth and Deckers' UGG brand annual sales have increased from $18.3 million in 1995 to $1.37 billion in 2011. *Id*. at ¶ 8. The October 27, 2008 article in *Footwear News Magazine* entitled "UGG Gives Footwear Retailers a Big Boost," details the strength of UGG brand sales in an otherwise flat footwear market. *Id*. at ¶ 9. A 2010 *Wall Street Journal*

*Magazine* article entitled "The Golden Fleece" further discusses the popularity of the UGG brand. *Id*. at ¶ 9.

UGG brand marketing and online sales represents a significant portion of Deckers' business. Since at least 1999, Deckers has operated a website at <www.uggaustralia.com> where it promotes and sells genuine UGG brand footwear and other UGG products. *Id*. at ¶ 10. Deckers also uses other domain names which redirect to this location. *Id*. at ¶ 10. Deckers' <www.uggaustralia.com> website is extraordinarily successful, with 2011 e-commerce UGG sales totaling over $98 million. *Id*. at ¶ 10.

Numerous magazines and newspapers have written stories about the widespread popularity of the UGG brand including *Entertainment Weekly* and *Forbes*. *Id*. at ¶ 11. The continual success and popularity of the UGG brand as a highly sought-after item (including through Internet sales) is reflected in search term results on popular online search engines and auction sites. The *Wall Street Journal* reported that "UGG boots" was the most searched-for apparel item for the four week period ending December 3, 2011. *Id*. at ¶ 11. According to *Time Magazine*, the three most searched fashion terms on the Internet over the 2007 holiday season were UGG, UGGS, and UGG BOOTS. *Id*. at ¶ 11.

The UGG brand has also become well-known as being a favorite of internationally known celebrities, many of which are featured in photographs published on the Internet, including Kate Moss, Sienna Miller, Hilary Duff, Jennifer Aniston, Eva Longoria, and Teri Hatcher. *Id*. at ¶ 12. Widespread and international media coverage for the UGG brand in multiple fashion and celebrity-oriented magazines has occurred in the U.S. and elsewhere, including articles in *Elle* and *Vogue Australia*. *Id*. at ¶ 12. Deckers augments this unsolicited

media coverage with extensive paid advertising in upscale luxury magazines worldwide such as *Elle*, *Glamour* and *Vogue*. *Id*. at ¶ 12.

Media exposure of the UGG brand is not limited to print periodicals. UGG boots have also been featured on many television shows seen around the world, including *Sex and the City* and the popular game show *Jeopardy!*. *Id*. at ¶ 13. UGG boots have also been on the Oprah Winfrey Show where Ms. Winfrey has named a Deckers boot as one of her favorite things in her annual "Holiday Favorite Things" segment five times including 2000, 2003, 2005, 2007 and 2010. *Id*. at ¶ 13. The widespread fame of the UGG brand for footwear has allowed Deckers to successfully extend the brand into clothing and accessories. *Id*. at ¶ 14.

### B. Defendants' Illegal Activities

Deckers' widespread fame and reputation has resulted in significant counterfeiting of the UGG Brand. As part of Deckers' ongoing enforcement activities regarding the sale of counterfeit products, Deckers regularly investigates suspicious websites and marketplace listings identified in Internet sweeps and reported by consumers. *See* Declaration of Justin R. Gaudio, hereinafter "Gaudio Declaration" at ¶ 2. Since 2011, Deckers identified over 17,000 domain names linked to fully interactive websites and 125,000 marketplace listings on platforms such as iOffer, including the Defendant Internet Stores, which were offering for sale, selling and importing counterfeit UGG products to consumers in this Judicial District and throughout the United States. *Id*. The Defendants are falsely representing to consumers that their counterfeit goods are genuine, authentic, endorsed, and authorized by Deckers. *Id* at ¶¶ 2-3. Ultimately, the Defendant Internet Stores collectively amount to a massive illegal operation infringing on the intellectual property rights of Deckers and others. *Id*.

Deckers' investigation indicates Defendants are an interrelated group of counterfeiters acting in active concert or copying from each other and are knowingly and willfully manufacturing, importing, distributing, offering for sale and selling products bearing counterfeit versions of the UGG Trademark to Illinois residents. *Id*. at ¶ 4. Defendants are directly and personally contributing to, inducing and engaging in the sale of counterfeit UGG products as alleged herein, and on information and belief, often times as partners, coconspirators and/or suppliers in the same transaction, occurrence, or series of transactions or occurrences. *Id*. The counterfeit products for sale on the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, indicating that the counterfeit products were manufactured by and come from a common source and that Defendants are interrelated. *Id*. In addition, the Defendant Internet Stores include multiple similarities, such as layout, text and copyright protected images copied from Deckers' uggaustralia.com website. *Id*. at ¶¶ 3-4.

Defendants use multiple fictitious names and addresses to register domain names. *Id*. at ¶¶ 3 and 5. Many of Defendants' names and addresses used to register the Defendant Domain Names are incomplete, randomly typed letters, contain street addresses with no cities or states listed or use a privacy service. *Id*. Deckers' investigation also suggests that many of the aliases used to register the Defendant Domain Names are used by the same individual or entity. *Id*. Deckers' investigation has been unable to identify a legitimate address for any of the Defendants. *Id*.

Defendants facilitate sales by designing their websites and marketplace listings so that they appear to unknowing consumers to be authorized online retailers selling genuine UGG products. *Id.* at ¶¶ 3 and 6. The websites and marketplace listings are sophisticated-looking, written in English, and accept U.S. dollars. *Id.* Many of the Defendant Domain Names

incorporate Deckers' UGG trademark and include Deckers' copyright-protected images and product descriptions, making it very difficult for a consumer to distinguish such sites from an authorized retailer. *Id.* Deckers has not licensed or authorized Defendants to use its UGG mark and none of the Defendants are authorized resellers of UGG products. *Id.* The Defendant Internet Stores accept payment via credit card or PayPal and ship the counterfeit products in small quantities Protection via the U.S. postal service to minimize detection by U.S. Customs and Border Protection. *Id.* Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard® and PayPal® logos. *Id.*

Defendants also attempt to deceive unknowing consumers by using Deckers' trademarks without authorization within the content, text and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for UGG products. *Id.* at ¶ 7. As a result, links to Defendants' websites show up at top of popular search results and misdirect consumers searching for genuine UGG products. *Id.*

Even if Deckers were to challenge and manage to force the inactivation of one or more of the websites at the Defendant Domain Names or Marketplace Accounts by a cease-and-desist letter, it is typical that Defendants lose no inventory, retain all of their profits, and simply move the website associated with the domain name to another server. (*Id.* at ¶ 8).

## III.    ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing, and will continue to cause, irreparable harm to Deckers' reputation and the goodwill symbolized by its trademarks. To freeze Defendants' activities, Deckers respectfully requests that this Court issue a temporary

restraining order ordering, *inter alia*, the transfer of the Defendant Domain Names to Deckers to redirect to a website providing notice of these proceedings and the freezing of Defendants' assets. Without the relief requested by Deckers' instant Motion, Defendants' illegal activity will continue unabated and Deckers and consumers will suffer enormous irreparable harm.

In light of the covert nature of offshore counterfeiting activities and the vital need to establish an economic disincentive for trademark counterfeiting, courts now regularly issue such orders. *See, e.g., Deckers Outdoor Corporation v. Does* 1-100, No. 12 Civ. 377, Docket No. 20 (N.D. Ill. 2012); *Deckers Outdoor Corporation v.* Liyanghua et al., No.11 Civ. 7970, Docket Nos. 18 and 25 (N.D. Ill. 2011); *Deckers Outdoor Corporation v. Does 1-55,* No. 11 Civ. 10, Docket Nos. 26, 38 and 69 (N.D. Ill. 2011); *Tory Burch, LLC., et al. v. Yong Sheng Int'l Trade Co., LTD,* No. 10 Civ. 9336 (S.D.N.Y. May 13, 2011)*; Farouk Systems, Inc. v. Eyou Int'l Trading Co., Ltd., et al.,* 10 Civ. 2672 (S.D. Tex. Aug. 2, 2010); *The North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co., et al.,* No. 10 CIV 1630 (S.D.N.Y. Mar. 16, 2010); *see also, Ford Motor Co. v. Lapertosa*, 126 F. Supp. 2d 463, 62 U.S.P.Q. 2d 1789 (E.D. Mich. 2000); *Trans Union LLC v. Credit Research, Inc.,* 142 F. Supp. 2d 1029 (N.D. Ill. 2001); and *In re Vuitton et Fils*, S.A., 606 F.2d 1 (2d Cir. 1979) (holding that ex parte temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief).

Rule 65(b) of the Federal Rules of Civil Procedure provides that that the Court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney where "immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." Fed.R.Civ.P. 65(b). This is such a case. The Defendants here fraudulently promote, advertise, offer to sell and sell

substantial quantities of goods bearing counterfeits of the UGG Trademark via the Defendant Internet Stores. Defendants are creating a false association in the minds of consumers between the Defendants and Deckers by deceiving consumers into believing that the goods for sale on Defendants are sponsored or endorsed by Deckers. The entry of a temporary restraining order is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the UGG Trademark and preserve the status quo until such time as a hearing can be held. Thus, a temporary restraining order is appropriate.

In the absence of a temporary restraining order without notice, the Defendants can and likely will modify registration data and content, change hosts, redirect traffic to other websites they control, and move any assets from any U.S.-based bank accounts, including PayPal accounts. Moreover, federal courts have long recognized that civil actions against counterfeiters – whose very business is built around the deliberate misappropriation of rights and property belonging to others – present special challenges that justify proceeding on an *ex parte* basis. S*ee Columbia Pictures Indus., Inc. v. Jasso*, 927 F.Supp 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"); *Time Warner Enter. Co. v. Does #1-2*, 876 F. Supp. 407. 410-11 (E.D.N.Y. 1994). This Court should prevent an injustice from occurring by issuing the requested *ex parte* temporary restraining order.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a), (b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from

a common nucleus of operative facts. Venue is proper in this Court pursuant 28 U.S.C. § 1391. Furthermore, this Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in Illinois and cause harm to Deckers' business within this Judicial District. *See* Complaint at ¶¶ 2, 4, 8, 9 and 11 – 17. Through at least the fully interactive commercial Internet websites operating under the Defendant Domain Names and the marketplace listings operated using the Marketplace Accounts, each of the Defendants has targeted and solicited sales from Illinois residents by operating English language websites and/or listings that offer shipping to Illinois, accept payment in U.S. dollars and, on information and belief, have sold counterfeit UGG products to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce and has wrongfully caused Deckers substantial injury in the State of Illinois.

### A. Standard for Temporary Restraining Order and Preliminary Injunction

District Courts within this Circuit hold that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank and Trust v. Charter One Fin., Inc.*, 2001 WL 527404, *1 (N.D.Ill. May 15, 2001) (citing *Frederick Atkins, Inc. v. Carson Pirie Scott & Co., Inc.,* 1999 WL 1249342, *1 (N.D. Ill. Dec. 13, 1999)). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See TY, Inc. v. The Jones Group, Inc.*, 237 F.3d 891 at 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the public interest (non-parties) in denying or granting the

injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* quoting *Abbot Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992). This process involves engaging in what the Court has deemed "the sliding scale approach," the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position. *Id.* The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* at 896.

### B. Deckers will Likely Succeed on the Merits

#### i. Deckers Will Likely Succeed on its Trademark Infringement and Counterfeiting Claim.

The greater the movant's likelihood of succeeding on the merits, the less the balance of harms need be in his favor. *See Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 461 (7th Cir. 2000). A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, uses in commerce, any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods….which such use is likely to cause confusion, or to cause mistake or to deceive." 15 U.S.C. § 1114(1). To prove a *prima facie* case of infringement, Deckers must show (1) it mark is distinctive enough to be worthy of protection, (2) Defendant was not authorized to use Deckers' Trademark and (3) Defendants' use of Deckers' Trademark causes a likelihood of confusion as to the origin or sponsorship of Defendants' products. *See Neopost Indus. B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citing *Bliss Salon Day Spa v. Bliss World LLC,* 268 F.3d 494, 496-97 (7th Cir.2001)). Deckers satisfies the three requirements of the Lanham Act to successfully bring a trademark infringement case.

Deckers unarguably meets the first two elements for its trademark infringement claim. Deckers has a trademark on its UGG mark registered with the United States Patent and Trademark Office. The UGG Trademark is registered as U.S. Trademark Registration No. 3,050,925 and has been used continuously since at least as early as 1979 by Deckers and its predecessors in interest. Evert-Burks Declaration at ¶ 3. Furthermore, Deckers has never licensed or given Defendants the right to use its UGG Trademark. Gaudio Declaration at ¶ 9.

Deckers satisfies the third factor as well. The Seventh Circuit has enumerated seven factors to determine whether there is a likelihood of confusion: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of defendants to palm off his product as that of another. *Eli Lilly & Co. v. Natural Answers*, *Inc.*, 233 F.3d 456, 461 (7th Cir. 2000) *citing Smith Fiberglass Prods.*, *Inc. v. Ameron*, *Inc.*, 7 F.3d 1327, 1329 (7th Cir.1993). These factors are not a mechanical checklist, and "[t]he proper weight given to each ... will vary from case to case." *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 381 (7th Cir.1996). At the same time, although no one factor is decisive, the similarity of the marks, the intent of the defendant, and evidence of actual confusion are the most important considerations. *G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 999 (7th Cir.1989).

Here, Deckers plainly satisfies the likelihood of confusion test. The Defendants are selling counterfeit versions of products that are virtually identical to Deckers' products and use counterfeit marks identical to Deckers' UGG Trademark. As such, the first and second factors weigh heavily in favor of Deckers.

Deckers also satisfies the third factor, area and manner of concurrent use. When considering the third factor, a court looks at "whether there is a relationship between the use, promotion, distribution or sales between the goods or services of the parties." *CAE, Inc. v. Clean Air Eng'g, Inc.,* 267 F.3d 660, 681 (7th Cir. 2001). A court also looks to whether the parties used the same channels of commerce, targeted the same general audience, and/or used similar marketing procedures. *Id*. Here, both Deckers and Defendants advertise and sell their products to consumers over the Internet. Both parties use the same means and the same channels of commerce to target the same Internet consumers looking for genuine UGG products. The Defendant Internet Stores advertise and sell counterfeit UGG products online just as Deckers advertises and sells its genuine UGG products at uggaustralia.com. Thus, because Defendants target the same Internet consumers by the same means Deckers does, this factor weighs heavily in favor of Deckers.

Regarding the fourth factor, degree of consumer care, consumers purchasing UGG products are not a certain specialized, sophisticated group of people. Rather, the consumer base here is a diverse group of people including children, adults, men, and women. "[W]hen a buyer class is mixed, the standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer in the class." *Trans Union LLC*, 142 F.Supp.2d at 1043 *citing Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 293 (3rd Cir. 1991), cert. denied, 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991). In addition, genuine UGG products are routinely priced from approximately $100 - $200. The counterfeit UGG products offered for sale on Defendants websites are typically priced slightly below standard retail prices, making it very difficult for consumers to determine the products are counterfeit. Taking into account the diverse group of UGG consumers and the closely related pricing schemes between

the counterfeit products and the genuine UGG products, UGG consumers are very likely to be confused, so this factor favors Deckers.

Deckers' UGG Trademark has been used for more than 30 years and has become famous and associated with sheepskin products and is distinctive when applied to the high quality apparel, footwear and related merchandise. It signifies to consumers that the products come from Deckers and are manufactured to the highest quality standard. Consumers have come to recognize the UGG brand as a source of premium sheepskin footwear. Thus, the fifth factor, the strength of the mark, also weighs heavily in favor of Deckers.

As for the sixth factor, Deckers does not need to prove likelihood of confusion with evidence of actual confusion, all it needs is *some* evidence showing confusion. *See Libman Co. v. Vining Indus., Inc.*, 69 F.3d 1360, 1363 (7th Cir.1995). In this case, actual confusion can be inferred because Defendants are selling counterfeit versions of Deckers' products and use the same UGG Trademark. Because the goods look almost identical, consumers will be confused and think that Defendants' products are genuine UGG products or are sponsored or endorsed by Deckers. This factor weighs in favor of Deckers.

Here, Defendants are intentionally using Deckers' UGG Trademark to confuse and deceive the consuming public into thinking that Defendants' counterfeit products are manufactured by Deckers. Defendants are purposely attempting to benefit and trade off of Deckers' goodwill and reputation. Therefore, the final factor, intent of defendant, also weighs heavily in Deckers' favor.

It is manifestly clear that each of the seven factors weighs heavily in favor of Deckers, and therefore Deckers has proved it has a reasonable likelihood of success on the merits for its trademark infringement and counterfeiting claim.

ii.  Deckers is Likely to Succeed on its False Designation of Origin Claim

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show: (1) defendant used a false designation of origin, (2) defendant's use of the products was in interstate commerce, and (3) the likelihood that consumers will be confused by defendant's false designation of origin.  *Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204 (7th Cir. 1990).  The test to be used in determining whether a violation has occurred is whether "the evidence indicates a likelihood of confusion, deception or mistake on the part of the consuming public."  *Id.* at 1205.  This is the same test that is used for bringing a trademark infringement claim under the Lanham Act.  *See Neopost Indus. B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005).  Because UGG is a registered mark and Deckers has established the merits of likelihood of confusion in its trademark infringement and counterfeiting claim against Defendants, a likelihood of success on the merits for Deckers' false designation of origin claim is also established.

iii.  Deckers is Likely to Succeed on its Cyberpiracy Claim

Pursuant to the Anticybersquatting Consumer Protection Act of 1996 (ACPA), a person alleged to be a cybersquatter is liable to the owner of a protected mark if that person: (i) has a bad faith intent to profit from that mark and (ii) registers, traffics in, or uses a domain name that…is identical or confusingly similar to or dilutive of a mark that is "distinctive" or "famous." 15 U.S.C. § 1125(d)(1)(A).  In such cases, in addition to other damages, "a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark."  15 U.S.C. § 1125(d).

Courts have often noted that one focus of the ACPA is to address counterfeit sellers who "register well-known marks to prey on consumer confusion by misusing the domain name to divert customers from the mark owner's site to the cybersquatter's own site, and target

distinctive marks to defraud consumers." *Lucas Nursery v. Grosse,* 359 F.3d 806, 809 (6th Cir. 2004); *see also*, *Diarama Trading Co., Inc. v. J. Walter Thompson U.S.A., Inc.,* 2005 WL 2148925, *12 (S.D.N.Y. Sept. 6, 2005); *Albert Furst von Thurn und Taxis v. Karl Prince von Thurn und Taxis,* 2006 WL 2289847, *13 (S.D.N.Y. Aug. 8, 2006).

### 1. *Deckers' UGG Trademark is Distinctive and Famous*

Deckers' UGG Trademark is famous with footwear consumers worldwide, particularly with sheepskin footwear consumers. As noted above, Deckers has invested many millions of dollars advertising and promoting its trademarks in the United States and throughout the world. Celebrities and consumers alike identify the UGG Trademark with Deckers' high quality products. As a result, Deckers' UGG Trademark has a high degree of acquired distinctiveness, and in turn, Deckers is likely to succeed in showing that its UGG Trademark is distinctive or famous.

### 2. *Defendants Have a Bad Faith Intent to Profit from Deckers' UGG Trademark*

Pursuant to the ACPA, a court may consider myriad factors when determining whether a person has a bad faith intent to profit from a mark, nine of which are enumerated in the law and include: (1) the trademark or other intellectual property rights of the person, if any, in the domain name; (2) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person; (3) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; (4) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; (5) the person's intent to divert consumers from the mark owner's online location to a site….that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark; (6) the person's offer to transfer, sell, or otherwise

assign the domain name to the mark owner or any third party for financial gain without having used…the domain name in the bona fide offering of any goods or services; (7) the person's provision of material and misleading false contact information when applying for the registration of the domain name; (8) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others; and (9) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous. 15 U.S.C. § 1125 (d)(1)(B)(i).

Federal courts recognize that "there is no simple formula for evaluating and weighing these factors." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 234 (4th Cir. 2002). To the contrary, the factors enumerated in the ACPA are given to the courts "as a guide, not as a substitute for careful thinking about whether the conduct at issue is motivated by a bad faith intent to profit." *Lucas Nursery & Landscaping, Inc.,* 359 F.3d at 810. A court is not limited, however, to considering the nine enumerated factors when determining the presence or absence of bad faith. 15 U.S.C. § 1125 (d)(1)(B)(i). Indeed, the factors are "expressly described as indicia that 'may' be considered along with other facts." *Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 267 (4th Cir. 2001) (quoting *Sporty's Farm, LLC v. Sportsman's Market, Inc.*, 202 F.3d 489, 498 (2d Cir. 2000)). The ACPA allows a court to view the totality of the circumstances in making the bad faith determination. *Id.* at 270.

Courts have held that the registration of a trademark owner's mark as part of a domain name used to sell counterfeit versions of the trademark owner's goods is a particularly egregious form of bad faith. *See, e.g. Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 584-585 (D. Pa. 2002). In the instant case, it is manifestly clear that the Defendants have acted with a bad faith intent to profit from Deckers' famous UGG Trademark. Many of the Defendant

Domain Names incorporate the UGG Trademark in its entirety and use Deckers' UGG Trademark and copyrighted photographs without authorization to sell counterfeit UGG boots. This is a clear violation of United States law, including Section 1125 of the Trademark Act (Section 43 of the Lanham Act) and Section 501 of the Copyright Act.

### 3. The Domain Names are Identical or Confusingly Similar to or Dilutive to Deckers' UGG Trademark

When dealing with domain names, a court must evaluate an allegedly infringing domain name in conjunction with the content of the website identified by the domain name. *Lamparello v. Falwell*, 420 F.3d 309, 316 (4th Cir. 2005). Here, there can be no question that many of the Defendant Domain Names are identical or confusingly similar to Deckers' UGG Trademark. Deckers UGG Trademark appears without alteration in many of the Defendant Domain Names, clearly referring to Deckers' brand. Moreover, as noted above, Defendants design their websites so that they look like authorized online retailers selling Deckers' genuine products. Defendants perpetuate this illusion by using domain names incorporating Deckers' registered trademarks and using Deckers' copyrighted photos and other images showing genuine products with detailed product descriptions (often copied-and-pasted directly from Deckers' own website at uggaustralia.com).

In addition, courts have found that the addition of generic or geographic terms, such as "shop," "online" and "store" are not sufficient to distinguish the domain name from a protected mark that it contains. *Harrods Ltd. v. Sixty Internet Domain Names,* 157 F. Supp. 2d 658, 677-78 (E.D. Va. 2001) citing *Anti-Defamation League of B'Nai B'Rith v. Nat'l Mex. Am. Anti-Defamation Comm., Inc.*, 510 F.2d 1246, 1247 (D.C.Cir.1975); *Kentucky Fried Chicken Corp. v. Smith*, 351 F. Supp. 1311, 1313 (E.D.Mich.1972)), *aff'd in part, rev'd in part,* 302 F.3d 214 (4th

Cir. 2002). As such, the Defendant Domain Names that incorporate Deckers' UGG Trademark are identical and/or confusingly similar to Deckers' UGG Trademark.

> ### iv. Deckers is Likely to Succeed on its Illinois Uniform Deceptive Trade Practice Act Claim

In Illinois, courts resolve unfair competition and deceptive trade practices claims "according to the principles set forth in the Lanham Act." *Spex, Inc. v. The Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994). Illinois courts look to federal case law and apply the same analysis to state infringement claims. *Spex*, 847 F. Supp. at 579 (citing *Thompson v. Spring-Green Lawn Care Corp.*, 126 Ill. App. 3d 99, 104-105 (Ill. App. Ct. 1984)). The determination as to whether there is a likelihood of confusion is similar under both the Lanham Act and the Illinois Uniform Deceptive Trade Practice Act statute. *Am. Broad. Co. v. Maljack Prod., Inc.*, 34 F. Supp. 2d 665, 681 (N.D. Ill. 1998). Because Deckers has established the merits of likelihood of confusion in its trademark infringement and counterfeiting claim against Defendants and the standard is the same under Illinois law, Deckers has established a likelihood of success on the merits for its Illinois Uniform Deceptive Trade Practices Act claim.

> ### C. There is No Adequate Remedy at Law and Deckers is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max North Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001). *See also Eli Lilly,* 233 F.3d at 468 (7th Cir. 2000) (citing *Abbot Labs.,* 971 F.2d at 16) (acknowledging that "irreparable harm is generally presumed in cases of trademark infringement and dilution"); *Dunkin Donuts Franchised Rest. LLC v. Elkhatib,* 2009 WL 2192753, *4 (N.D. Ill. July 17,

2009) (recognizing that irreparable harm and inadequate remedy at law are presumed in trademark and trade dress infringement cases).

This presumption arises, "in part, from the realization 'that the most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendant's goods.'" *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979) (quoting *4 Callman, Unfair Competition, Trademarks and Monopolies* s 88.3(b) at 205 (3d ed. 1970)). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus.,* 612 F.2d at 1026.

"Irreparable harm is harm 'which cannot be repaired, retrieved, put down again, atoned for.... [T]he injury must be of a particular nature, so that compensation in money cannot atone for it.'" *Graham v. Medical Mut. of Ohio,* 130 F.3d 293, 296 (7th Cir. 1997) (quoting *Gause v. Perkins,* 56 N.C. (3 Jones Eq.) 177 (1857)). The irreparable harm that Deckers is suffering, and will continue to suffer, is not only a matter of legal presumption but of plain and simple fact. Defendants' continued use of Deckers' UGG Trademark threatens to irreparably harm Deckers' name and marks and the goodwill associated with it. No amount of money could adequately compensate Deckers for this threat to the reputation and goodwill of its wide range of high-quality products. Such harms are irreparable. As such, the injunctive relief sought by Deckers should be granted.

### D. The Balancing of Harms Tips in Deckers' Favor

As noted above, if the Court is satisfied that Deckers has demonstrated (1) a likelihood of success of merits, (2) no adequate remedy at law and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the irreparable harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Deckers will suffer if relief is denied. *TY, Inc.*, 237 F.3d at 895. As willful infringers,

Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l, Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). Plainly, that is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages derived thereby." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). The balance of harms, as such, "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomm. Indus. Ass'n*, 929 F. Supp. 473, 478 (D.D.C. 1996).

As Deckers has demonstrated, Defendants have been profiting from the sale of counterfeit UGG products, thus proving that the balance of equities tips decisively in its favor. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

### E.     This Injunction is in the Public Interest

An injunction in these circumstances is in the public interest because it will prevent consumer confusion and stop defendants from violating federal trademark law. The public is currently under the false impression that defendants are operating their websites with Deckers' approval and endorsement. An injunction serves the public interest in this case "because enforcement of the trademark laws prevents consumer confusion." *Eli Lilly*, 233 F.3d at 469.

Federal courts have long-held that "the trade-mark laws . . . are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit." *Stahly, Inc. v. M.H. Jacobs Co.,* 183 F.2d 914, 917 (7th Cir. 1950) (citing *Stork Restaurant, Inc., v. Sahati*, 166 F.2d 348, 354 (9th Cir. 1948); *Rosenberg*

*Bros. & Co. v. Elliott*, 7 F.2d 962, 965-66 (3rd Cir. 1925); *Gen. Baking Co. v. Gorman*, 3 F.2d

891, 893 (1st Cir. 1925); *Goldwyn Pictures Corp. v. Goldwyn*, 296 F. 391, 401 (2d Cir. 1924)).

The public interest is further served by protecting "the synonymous right of a trademark

owner to control his product's reputation." *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540

F.2d 266, 274 (7th Cir. 1976).; *see also Shashi, Inc. v. Ramada Worldwide, Inc.,* 2005 WL

552593, *4 (W.D. Va. Mar. 1, 2005) ("It is in the best interest of the public for the court to

defend the integrity of the intellectual property system and to prevent consumer confusion").

In this case, the injury to the public is patent, and the injunctive relief which Deckers

seeks is specifically intended to remedy that injury by dispelling the public confusion created by

Defendants' actions. The public has the right not to be confused or defrauded as to the source of

the goods and services offered by Defendants, or as to the identity of the owner of trademarks

and service marks used in connection with those goods and services. Unless Defendants'

continuing misuse of the Deckers UGG Trademark is enjoined, the public will continue to be

confused and misled by defendants' conduct.

As such, Deckers' Application for entry of Temporary Restraining Order is in the public

interest.

## VI. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to principles of

equity and upon such terms as the court may deem reasonable, to prevent the violation of any

right of the registrant of a mark …" 15 U.S.C. § 1116(a).

### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Illegal Use of the Deckers Marks is Appropriate

Deckers' requests an order requiring the Defendants to immediately cease all use of the

Deckers UGG Trademarks, or substantially similar marks, on or in connection with all Internet

websites owned and operated, or controlled by them and any market place listings. Such relief is necessary to stop the ongoing harm to Deckers' Trademark and goodwill and to prevent the Defendants from continuing to benefit from the increased traffic to their operations created by their illegal use of the Deckers Trademark. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate over the Internet in an anonymous fashion. Deckers is currently unaware of the true identities and locations of the Defendants or the location of Defendants' other websites and counterfeit products that are being readily distributed. Many courts have authorized immediate injunctive relief in cases involving the unauthorized use of trademarks. *See, e.g. Deckers Outdoor Corporation v. Does 1-100*, No. 12 Civ. 377, Docket No. 20 (N.D. Ill. January 27, 2012) (Order granting *Ex Parte* Application for Temporary Restraining Order); *Deckers Outdoor Corporation v.* Liyanghua et al., No.11 Civ. 7970, Doc. No. 18 (N.D. Ill. Nov. 15, 2011); *Deckers Outdoor Corporation v. Does 1-55,* No. 11 Civ. 10, Doc. No. 26 (N.D. Ill. February 3, 2011) (same); *Tory Burch, LLC., et al. v. Yong Sheng Int'l Trade Co., LTD,* No. 10 Civ. 9336 (S.D.N.Y. January 4, 2011) (same*); Farouk Systems, Inc. v. Eyou Int'l Trading Co., Ltd., et al.,* No. 4:10 CV 2672 (S.D. Tex. Aug. 2, 2010) (same); *The North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co., et al.,* No. 10 CIV 1630 (S.D.N.Y. Mar. 16, 2010) (same); Chanel, Inc. v. Does 7-172, et al., No. 2:10-cv-02684-BBD-dkv (W. D. Tenn. Nov. 1, 2010) (same); *Ford Motor Co. v. Lapertosa,* 126 F. Supp. 2d 463 (E.D. Mich. 2001) (enjoining Defendant from "using in any way the Internet domain name 'fordrecalls.com'"); *Kraft Food Holdings, Inc. v. Helm,* 205 F. Supp. 2d 942, 956 (N.D. Ill. 2002) (granting preliminary injunction requiring defendant "immediately" to remove all references to version of plaintiff's mark, including removing all references "from metatags, metanames, or any other keywords on his websites").

### B. An Order Transferring the Defendant Domain Names to Deckers' Control is Appropriate

To preserve the status quo and prevent further infringement during the important winter sales months, Deckers seeks an order transferring the Defendant Domain Names to Deckers to disable and electronically publish notice of this case to Defendants.  Defendants involved in domain name litigation easily can, and often will, change the ownership of a domain name and thereby frustrate the court's ability to provide relief to the plaintiff.  Moreover, defendants can and often do modify website content to thwart discovery and redirect traffic to thwart effective injunctive relief.  Accordingly, to preserve the status quo and ensure the possibility of eventual effective relief, courts in trademark cases involving domain names regularly grant such relief. *See, e.g., Deckers Outdoor Corporation v. Does 1-100*, No. 12 Civ. 377, Docket No. 20 (N.D. Ill. January 27, 2012) (Order granting *Ex Parte* Application for Temporary Restraining Order including the transfer of domain names); *Deckers Outdoor Corporation v.* Liyanghua et al., No.11 Civ. 7970, Docket No. 18 (N.D. Ill. Dec. 15, 2011) (same); *Deckers Outdoor Corporation v. Does 1-55,* No. 10 Civ. 11, Docket No. 26 (N.D. Ill. February 3, 2011) (same); *Tory Burch, LLC., et al. v. Yong Sheng Int'l Trade Co., LTD,* No. 10 Civ. 9336 (S.D.N.Y. January 4, 2011) (same); *Farouk Systems, Inc. v. Eyou Int'l Trading Co., Ltd., et al.,* No. 4:10 CV 2672 (S.D. Tex. Aug. 2, 2010) (same); *The North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co., et al.,* No. 10 CIV 1630 (S.D.N.Y. Mar. 16, 2010) (same); *Chanel, Inc. v. Does 7-172, et al.,* No. 2:10-cv-02684-BBD-dkv (W. D. Tenn. Nov. 1, 2010) (same); *Chanel, Inc. v. Zhixian,* No. 10-cv-60585-JIC (S.D. Fla. May 5, 2010) (same); *Gucci America, Inc. and Louis Vuitton Malletier, S.A. v. Yan*, No. 10-cv-61512-WPD (S.D. Fla. Aug. 20, 2010) (same); *Gucci America, Inc. v. Does 1-10*, No. 10-cv-60328-JAL (S.D. Fla. Mar. 22, 2010) (same); *see also Bd. of Dir. of*

*Sapphire Bay Condominiums West v. Simpson,* 77 U.S.P.Q. 2d (BNA) 1629, 129 Fed. Appx. 711 (3rd Cir. 2005) (affirming District Court's granting of the preliminary injunction ordering defendant to "cancel his registration of the domain name and refrain from using the name, or any derivative thereof, for any Web site under his ownership or substantial control"); *Chanel, Inc. v. Paley,* No. 09-cv-04979-MHP (N.D. Cal. Oct. 26, 2009) (granting temporary restraining order and disabling domain names at issue). *Iconix v. Tokuda,* 457 F. Supp. 2d 969, 999 (N.D. Cal. 2006) (prohibiting defendants "from using, selling, licensing, or transferring the domain name"); *Ford Motor Co. v. Lapertosa,* 126 F. Supp. 2d at 467 (granting Plaintiff's preliminary injunction because, among other things, "Defendant's misappropriation of the goodwill [Plaintiff] has developed in the mark by registering the [infringing] Internet domain name . . . significantly tarnishes [Plaintiff's] reputation").

As such, Deckers respectfully contends that its request for an order requiring the relevant registries and/or registrars for the Defendant Domain Names to transfer the domain names to Deckers during the pendency of this case should be granted.

### C. An Order Preventing the Fraudulent Transfer of Assets is Appropriate

Deckers requests an *ex parte* order restraining Defendants' assets so that Deckers' right to an equitable accounting of Defendants' profits from sales of counterfeit UGG products is not impaired. Issuing an *ex parte* order will ensure Defendants' compliance. If such an order is not issued in this case, Defendants will disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before an order is issued. Specifically, upon information and belief, in this case, it is believed that Defendants hold most of their assets in China making it easy to hide or dispose of assets, which will render an accounting by Deckers meaningless.

In addition, the amount of damages to which Deckers is entitled as set forth in the Complaint far exceeds any amount likely contained in any of the Defendants' PayPal accounts or other U.S. financial accounts on the day the accounts are frozen. For example, Deckers' prayer for relief requests damages in excess of $2 million, minimum, from each defendant. As in collecting such a judgment Deckers would be entitled to any monies of the Defendants — not just those attributable to sales of Deckers' products.

Deckers has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117, Deckers is entitled to an accounting and recovery of profits, damages, and costs from Defendants' infringing actions and sales of counterfeit UGG products. Furthermore, several circuits, including this Circuit, have found the Lanham Act grants the District Court authority to issue a restraining order freezing Defendants' assets in cases where a plaintiff seeks an equitable remedy.

In the seminal *Reebok v. Marnatech* case, the 9th Circuit affirmed the district court's ruling limiting the transfer of assets and explicitly stated that "because the Lanham Act authorizes the district court to grant [plaintiff] an accounting of [defendant's] profits as a form of final equitable relief, the district court had the inherent power to freeze [defendant's] assets in order to ensure the availability of that final relief." *Reebok Int'l Ltd. v. Marnatech Enters.*, 970 F.2d 552, 559 (9th Cir. 1992).

Since *Reebok*, many Federal Courts, including the Northern District of Illinois, have granted orders preventing the fraudulent transfer of assets. *See, e.g., Deckers Outdoor Corporation v. Does 1-100*, No. 12 Civ. 377, Docket No. 20 (N.D. Ill. January 27, 2012) (Order granting *Ex Parte* Application for Temporary Restraining Order including the freezing of

Defendants' financial accounts); *Deckers Outdoor Corporation v.* Liyanghua et al., No.11 Civ. 7970, Docket No. 20 (N.D. Ill. Dec. 15, 2011) (same); *Deckers Outdoor Corporation v. Does 1-55,* No. 11 Civ. 10, Docket No. 26 (N.D. Ill. February 3, 2011) (same); *Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, 2005 WL 3115892 (N.D. Ill. Nov. 8, 2005); *Tory Burch, LLC., et al. v. Yong Sheng Int'l Trade Co., LTD,* No. 10 Civ. 9336 (S.D.N.Y. January 4, 2011); *Farouk Systems, Inc. v. Eyou Int'l Trading Co., Ltd., et al.,* No. 4:10 CV 2672 (S.D. Tex. Aug. 2, 2010); *The North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co., et al.,* No. 10 CIV 1630 (S.D.N.Y. Mar. 16, 2010); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995). The Northern District in *Lorillard* followed the *Reebok* decision when it held that a court has "the authority to enter an order freezing assets in cases where the plaintiff seeks an equitable remedy generally, and specifically in Lanham Act cases." *Lorillard*, 2005 WL 3115892 at *13. Furthermore, Federal Rules of Civil Procedure 64 and 65 provide authority for preliminary injunctions and the freezing of assets, and the Lanham Act provides for Plaintiff's an accounting and recovery of profits, costs, and damages. Fed.R.Civ.P. 64-65; 15 U.S.C. § 1117. Since Deckers seeks recovery of Defendants' profits, an order freezing the Defendants' assets is within the court's authority should be granted. *Lorillard*, 2005 WL 3115892 at *13.

Deckers has shown a likelihood of success on the merits, the immediate and irreparable harm suffered as a result of Defendants' activities, and that unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. *See Reebok*, 737 F. Supp. at 1527. Accordingly, the granting of an injunction preventing the transfer of Defendants' assets is proper.

### D. Deckers is Entitled to Expedited Discovery

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld* 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)).   A district court has wide latitude in determining whether to grant a party's request for discovery. *Id.* (citing *Doty v. Illinois Cent. R.R. Co.,* 162 F.3d 460, 461 (7th Cir.1998)).   Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed.R.Civ.P. 26(b)(2) and *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

As demonstrated above, Deckers is being irreparably harmed by the manufacture, importation, offering for sale, distribution, and sale of counterfeit UGG products.   Defendants have gone to great lengths to conceal their true identities and/or move outside of this Court's reach by, among other things, excluding any identifiable information from Defendants' websites and using false and incomplete information in their registrations for the Defendant Domain Names.   Defendants are using third-party payment processors such as Visa, PayPal and Western Union to help increase their anonymity, since there is a third party interposed between the consumer and Defendants.   Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Deckers would not know the entities upon whom to serve the order.

Deckers respectfully requests an *ex parte* Order allowing expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations.   The discovery requested on an expedited basis in Deckers' Proposed Temporary Restraining Order has been precisely defined and carefully limited to include only what is essential to prevent

further irreparable harm. Discovery of these financial accounts in addition to Defendants' identities and information related to Defendants' websites and other operations will permit Deckers to gain a full and accurate picture of Defendants' counterfeiting activities and ensure that these activities will be contained.

Deckers is unaware of any reason that Defendants or third parties cannot comply with these expedited discovery requests without undue burden and all relevant third parties have in fact complied in previous cases. More importantly, Defendants have engaged in so many deceptive practices in hiding their identities and accounts that Deckers' seizure Order and asset restraint may have little meaningful effect without the requested relief. Accordingly, the request for expedited discovery should be granted.

### E. Service of Process by E-mail and Electronic Publication is Warranted in this Case

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Deckers requests an order allowing service of process on Defendants via electronic mail ("e-mail") to the registrant of each of the Defendant Domain Names at the e-mail address provided by the registrant to the registrar and by electronically publishing notice of this action at the Defendant Domain Names. Electronic service is appropriate and necessary in this case because the Defendants on information and belief (1) have provided false physical address information in their registrations for the Defendant Domain Names in order to conceal their locations and avoid liability for their unlawful conduct and (2) rely primarily on electronic communications to communicate with their registrars and customers, demonstrating the reliability of this method of communication by which the registrants of the Defendant Domain Names may be apprised on the pendency of this action. Deckers respectfully submits that an order allowing service of process solely via email and electronic publication in this case will benefit all parties and the Court by ensuring the

registrants of the Defendant Domain Names receive immediate notice of the pendency of this action and allowing this action to move forward expeditiously. Absent the ability to serve the Defendants in this manner, Deckers will almost certainly be left without the ability to pursue a remedy.

According to regulations established by the Internet Corporation for Assigned Names and Numbers ("ICANN"), an individual or entity that registers a domain name is required to provide accurate contact information for the domain name. *See* Gaudio Declaration at ¶ 10. As demonstrated, the registrants for the Defendant Domain Names have ignored the applicable ICANN regulations and provided false physical address information to the domain name registrars in order to avoid liability for their criminal conduct. However, as a practical matter, the registrants of the Defendant Domain Names generally must maintain an accurate email address where their registrars may communicate with them regarding issues related to the purchase, transfer, and maintenance of the various accounts. Moreover, it is necessary for merchants, such as the registrants of the Defendant Domain Names, who operate entirely online, to provide customers with accurate email addresses by which the customer can contact the merchant to ask questions about the merchant's products, place orders from the merchant's Internet websites, and receive information from the merchant regarding the shipment of an order.

Deckers conducted searches of the public WhoIs information regarding the Defendant Domain Names identifying the e-mail addresses the registrants provided the Registrars. *Id*. at ¶ 3. Many of Defendants' names and addresses used to register the Defendant Domain Names are incomplete, randomly typed letters, contain street addresses with no cities or states listed or use a privacy service. Overlapping contact information also suggests that many of the aliases used to register the Defendant Domain Names are used by the same individual or entity. Thus, based on

the provision of invalid postal addresses and likely fictitious name(s), Deckers cannot serve the Defendants by traditional means.

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement as the Court directs. *Rio Props, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). Rule 4 does not require that a party attempt service of process by those methods enumerated in Rule 4(f)(2) before petitioning the court for alternative relief under Rule 4(f)(3). *Id*. at 1114-15. The Ninth Circuit in *Rio Properties* held, "without hesitation," that email service of an online business defendant "was constitutionally acceptable." *Rio Props*., 284 F.3d at 1017. The Court reached this conclusion in part because the defendant conducted its business over the Internet, used email regularly in its business, and encouraged parties to contact it via email.

Similarly, a number of Courts, including the Northern District of Illinois, have held that alternate forms of service pursuant to Rule 4(f)(3), including email service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." S*ee, e.g., Deckers Outdoor Corporation v. Does 1-100*, No. 12 Civ. 377, Docket No. 44 (N.D. Ill. February 28, 2012); *Deckers Outdoor Corporation v.* Liyanghua et al., No.11 Civ. 7970, Docket No. 57 (N.D. Ill. February 28, 2012); *Deckers Outdoor Corporation v. Does 1-55,* No. 11 Civ. 10, Docket No. 26 (N.D. Ill. February 3, 2011); *MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co. Ltd.*, 2008 WL 5100414, *2 (N.D. Ill. Dec. 1, 2008) (holding email and facsimile service appropriate); *Farouk Systems, Inc. v. Eyou Int'l Trading Co., Ltd., et al.,* No. 4:10 CV 2672 (S.D. Tex. Aug. 2, 2010); *The North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co., et al.,* No. 10 CIV 1630 (S.D.N.Y. Mar. 16, 2010); *Popular Enter., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004) (quoting *Rio*

*Properties*, 284 F.3d at 1018) (allowing email service); s*ee also Williams-Sonoma, Inc. v. FriendFinder, Inc.*, 2007 WL 4973848, *4 (N.D. Cal. Dec. 6, 2007) (allowing email service); *Philip Morris USA, Inc. v. Veles Ltd.*, 2007 WL 725412, *1, (S.D.N.Y. Mar. 12, 2007) (same); *Williams v. Advertising Sex LLC*, 231 F.R.D. 483, 488 (N.D. West Va. 2005) (same); *Juniper Networks, Inc. v. Bahattab*, 2008 WL 250584, *1-2 (D.D.C. Jan. 30, 2008) (citing *Rio* and other cases in holding that "in certain circumstances …service of process via electronic mail … is appropriate and may be authorized by the Court under Rule 4(f)(3) of the Federal Rules of Civil Procedure"). Deckers submits that allowing service solely by email and electronic publication in the present case is appropriate and comports with constitutional notions of due process, particularly given the decision by the registrants of the Defendant Domain Names to conduct their illegal Internet-based activities anonymously.

Deckers is unable to determine the exact physical whereabouts or identity of the registrants of the Defendant Domain Names. However, Deckers has good cause to suspect the registrants of the respective Defendant Domain Names are all residents of China. The United States and the People's Republic of China are both signatories to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (the "Convention"). Gaudio Declaration at ¶ 11.

U.S. Courts have routinely authorized international mail and email service notwithstanding the applicability of the Hague Convention. *See e.g.*, *Brockmeyer v. May*, 383 F.3d 798, 800 (9th Cir. 2004) ("[W]e join the Second Circuit in holding that the Hague Convention allows service of process by international mail"); *Nanya Tech. Corp. v. Fujitsu Ltd.*, 2007 WL 269087, *6, (D. Guam, Jan. 26, 2007) (Hague Convention, to which Japan is a signatory, did not prohibit email service upon Japanese defendant); *Popular Enters.*, 225 F.R.D.

at 562 (recognizing that, while "communication via e-mail and over the internet is comparatively new, such communication has been zealously embraced within the business community"). In addition, the law of the People's Republic of China does not appear to prohibit the service of process by email and allows for alternate service means in certain circumstances. Gaudio Declaration at ¶ 12. As such, this Court should grant Deckers permission to serve Defendants via email.

## V.       A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary or permanent injunction is vested in the Court's sound discretion. *Mascio v. Public Emp. Retirement Sys. of Ohio,* 160 F. 3d 310, 313 (6th Cir. 1998); *Rathman Group v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1987); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411 (4th Cir. 1999).

Because of the strong and unequivocal nature of Deckers' evidence of counterfeiting and infringement and unfair competition, Deckers respectfully requests this Court require Deckers to post a bond of no more than Ten Thousand dollars ($10,000.00). *See, e.g., Deckers Outdoor Corporation v. Does 1-100*, No. 12 Civ. 377, Docket Nos. 20, 30 and 35 (N.D. Ill. 2012) ($10,000 bond); *Builder's World, Inc v. Marvin Lumber & Cedar, Inc.* 482 F.Supp.2d 1065, 1078 (E.D.Wisc.2007) ($1,000 bond); *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 456 (7th Cir. 2010) ($10,000 bond); *True Religion Apparel, Inc. et al. v. Xiaokang Lee et al.*, No. 11 Civ. 8242 (S.D.N.Y. Dec. 12, 2011) ($10,000 bond); *Nat'l Football League v. Chen Cheng*, No. 11 Civ. 0344 (S.D.N.Y. Jan. 31, 2011) ($10,000 bond); *Farouk Systems, Inc. v. Eyou Int'l Trading Company, Ltd., et al.,* No. 10 Civ. 2672 (S.D. Tex. Aug. 16, 2010) ($10,000 bond); *Chanel, Inc. v. Zhixian,* No. 10-cv-60585-JIC (S.D. Fla. April 21, 2010) ($10,000 bond); *Chanel, Inc. v. Paley,* No. 09-cv-04979-MHP (N.D. Cal. Nov. 13, 2009)

($10,000 bond)*; Gucci Am., Inc. v. Curveal Fashion,* No. 09 Civ. 8458 (S.D.N.Y. Oct. 15, 2009) ($10,000 bond).

## VI.    CONCLUSION

Defendants' counterfeiting operations are irreparably harming Deckers' business, its UGG brand and consumers. Without entry of the requested relief, Defendants' sale of the counterfeit products will continue to lead prospective purchasers and others to believe Defendants' counterfeit products have been manufactured by Deckers, when in fact, they have not. Further, such deception will occur during the critical winter months which represents the peak sales season for Deckers' UGG products. Therefore, entry of an *ex parte* order is necessary to protect Deckers' UGG Trademark rights, to prevent further harm to Deckers and the consuming public, and to preserve the status quo. In view of the foregoing, Deckers respectfully requests this Court enter a temporary restraining order in the form submitted herewith and set a hearing regarding Deckers' preliminary injunction before the expiration of the temporary restraining order.

Dated this 20th day of March 2012.

Respectfully submitted,

__/s/ Justin R. Gaudio_____

Kevin W. Guynn
Amy Ziegler
Justin R. Gaudio
Greer, Burns & Crain, Ltd.
300 South Wacker Drive
Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
kguynn@gbclaw.net
aziegler@gbclaw.net
jgaudio@gbclaw.net