**Declaration of Justin R. Gaudio**

I, Justin R. Gaudio, of the City of Chicago, in the State of Illinois, declare as follows:

1. I am an attorney at law, duly admitted to practice before the Courts of the State of Illinois, and the United States District Court for the Northern District of Illinois. I am one of the attorneys for Plaintiff Deckers Outdoor Corporation ("Deckers"). Except as otherwise expressly stated to the contrary, I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify as follows:

2. As part of my representation of Deckers, I perform or supervise investigations related to Internet-based infringement of the UGG®. As part of Deckers' ongoing enforcement activities regarding the sale of counterfeit products, Deckers regularly investigates suspicious websites and online marketplace listings identified in Internet sweeps and reported by consumers. When a domain name or marketplace listing is discovered that has infringed the UGG trademark, the activities conducted on the corresponding website are investigated. The website or listing is examined to see if its operator is misrepresenting itself as either an authorized distributor of genuine UGG boots or as Deckers itself, to determine if counterfeit goods are being promoted, and to determine if any of Deckers' copyrighted works are being infringed. Since 2011, Deckers has identified over 17,000 domain names linked to fully interactive websites and 125,000 marketplace listings on platforms such as eBay and iOffer, including the Defendant Internet Stores, which were offering for sale, selling and importing counterfeit UGG products to consumers in this Judicial District and throughout the United States. The Defendants are falsely representing to consumers that their counterfeit goods are genuine, authentic, endorsed, and authorized by Deckers. Ultimately, the Defendant Internet

Stores collectively amount to a massive illegal operation infringing on the intellectual property rights of Deckers and others.

3. My firm's investigation shows that Defendants are using the Defendant Internet Stores to sell counterfeit UGG boots from China to consumers in the U.S. and elsewhere. My firm visited and analyzed each of the Defendant Internet Stores and determined that counterfeit UGG products were being offered for sale to Illinois residents. This conclusion was reached through visual inspections of the products, the pricing of the UGG branded products listed, and because Defendants and their websites do not conduct business with Deckers and do not have the right or authority to use the UGG trademark for any reason. Additionally, my firm's investigation noted disclaimers on many of the Defendants' webpages which expressly acknowledge the UGG branded goods sold thereon are "replica." True and correct copies of the printouts reflecting samples of the websites and marketplace listings reviewed are attached as Exhibit 1 and corresponding WhoIs information is attached as Exhibit 2.

4. Our investigation indicates Defendants are an interrelated group of counterfeiters acting in active concert or copying from each other and are knowingly and willfully manufacturing, importing, distributing, offering for sale and selling products bearing counterfeit versions of the UGG Trademark to Illinois residents. Defendants are directly and personally contributing to, inducing and engaging in the sale of counterfeit UGG products as alleged herein, and on information and belief, often times as partners, coconspirators and/or suppliers in the same transaction, occurrence, or series of transactions or occurrences. The counterfeit products for sale on the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, indicating that the counterfeit products were manufactured by and come from a common source and that Defendants are interrelated. In addition, the

websites linked to Defendant Internet Stores include multiple similarities, such as the same page layout, text and copyright protected images copied from Deckers' uggaustralia.com website.

5. Defendants use multiple fictitious names and addresses to register domain names. Many of Defendants' names and addresses used to register the Defendant Domain Names are incomplete, randomly typed letters, contain street addresses with no cities or states listed or use a privacy service. Our investigation also suggests that many of the aliases used to register the Defendant Domain Names are used by the same individual or entity. Deckers' investigation has been unable to identify a legitimate address for any of the Defendants.

6. Defendants facilitate sales by designing their websites so that they appear to unknowing consumers to be authorized online retailers selling genuine UGG products. The websites and marketplace listings are sophisticated-looking, written in English, and accept U.S. dollars. Many of the Defendant Domain Names incorporate Deckers' UGG trademark and include Deckers' copyright-protected images and product descriptions, making it very difficult for a consumer to distinguish such sites from an authorized retailer. Deckers has not licensed or authorized Defendants to use its UGG mark and none of the Defendants are authorized resellers of UGG products. The websites and marketplace listings accept payment via credit card or PayPal and ship the counterfeit products in small quantities to minimize detection by U.S. Customs and Border Protection via the U.S. postal service. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard® and PayPal® logos.

7. Defendants also attempt to deceive unknowing consumers by using Deckers' trademarks without authorization within the content, text and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for UGG products. As a result, links to Defendants' websites show up at top of popular search results and misdirect consumers searching for genuine UGG products.

8. Even if Deckers were to challenge and manage to force the inactivation of one or more of the websites at the Defendant Domain Names Marketplace Accounts by a cease-and-desist letter, it is typical that Defendants lose no inventory, retain all of their profits, and simply move the website associated with the domain name to another server.

9. I am informed that Deckers has not licensed or authorized Defendants to use its UGG mark and none of the Defendants are authorized resellers of genuine UGG products.

10. I accessed the Internet Corporation for the Assigned Names and Numbers ("ICANN") website at www.icann.org in order to download the ICANN Uniform Domain Name Dispute Resolution Policy ("UDRP"). A true and correct copy of the ICANN UDRP is downloaded from www.icann.org and is attached hereto as Exhibit 3.

11. I reviewed the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters ("Hague Convention"), to which China is a signatory. The Hague Convention does not preclude service by email, and the declarations to the Hague convention filed by China do not expressly prohibit email service. Additionally, according to Article 1 of the Hague Convention, the "convention shall not apply where the address of the person to be served with the document is not known." A true and correct copy of the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in

Civil and Commercial Matters, and a list of signatory members, are collectively attached hereto as Exhibit 4.

12. I researched whether the issuance of an order to serve process upon the Defendant by electronic mail pursuant to Fed. R. Civ. P. 4(f)(3) is contrary to or likely to offend the law of the People's Republic of China (the "PRC"). I located an English language version of the current Civil Procedure Law of the PRC, which was adopted on April 9, 1991. A true and correct copy of the Civil Procedure Law downloaded from Chinacourt.org, a website sponsored by the Supreme People's Court of the PRC, is attached hereto as Exhibit 5. Chapter VII, Section 2, of the Civil Procedure Law governs service of process. I am informed and believe that the law does not preclude the service of process by email and allows for alternate service of process in certain circumstances. For example, Article 84 of the law provides that if the whereabouts of a recipient of the service is unknown, or if a document cannot be served by the other methods reflected in the law, a document shall be served by public announcement, a method even less likely to reach a defendant than service by email.

13. Exhibit 6 attached hereto is a true and correct copy unpublished decisions cited in Deckers' Memorandum.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 19th day of March, 2012, at Chicago, Illinois.

/Justin R. Gaudio/

Justin R. Gaudio

Counsel for Deckers Outdoor Corporation